## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

HORACE RICHARDSON,

    Plaintiff,

vs.                                CV-00-J-3688-S

HENDERSON EXCAVATING,
COMPANY, INC.,

    Defendant.

**ENTERED**

NOV 1 9 2001

## MEMORANDUM OPINION

    Currently pending before the court is the defendant's motion for summary judgment (doc. 8), memorandum and evidence in support thereof, to which the plaintiffs responded, and the defendant thereafter submitted a reply. The court has reviewed all of the pleadings and briefs in support of and in opposition to the motion for summary judgment.

### I. Factual Background

    Horace Richardson ("Plaintiff") began working for Henderson Excavating Company ("Defendant") in April 1997 as a truck driver. Complaint at ¶ 6. The plaintiff asserts that during his employment Ray Weaver ("Weaver"), a dispatcher employed by the defendant, referred to Richardson as "boy" and "nigger." Depo. of Horace Richardson at 179-181. Randall Henderson ("Henderson"), the president of Henderson Excavating



Company, met with the plaintiff and Weaver in response to the plaintiff's complaints about Weaver's language. Depo. of Richardson at 181-184.

In November 1999, Henderson discovered that scrap metal was missing from a work site where the plaintiff and Oscar Brown ("Brown"), an operator also employed by the defendant, were working. Depo. of Henderson at 20-21. Upon this discovery, Henderson met with the plaintiff and Brown. Depo. of Richardson at 82-83. Henderson accused the men of taking scrap metal from the work site, selling it at a nearby scrap yard, and pocketing the money. Depo. of Richardson at 83-88; Depo. of Henderson at 21. The plaintiff denied stealing the scrap metal. Depo. of Richardson at 85-87. Nevertheless, the plaintiff gave Henderson fifty dollars.[1] Depo. of Richardson at 87-89. Both the plaintiff and Brown were terminated based on their alleged theft of the scrap metal. Depo. of Richardson at 92-93. After his termination, the plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that his termination had been discriminatory.[2] Complaint at ¶ 11.

Subsequently, Brown returned to work after an apology and payment of five hundred dollars for the scrap metal. Depo. of Oscar Brown at 20-22; Depo. of Henderson

---

[1] Richardson testified that he gave fifty dollars to Henderson because Richardson had used the company truck during his lunch hour to run errands and had received tip money for such use.

[2] The plaintiff does not allege wrongful termination in his complaint and appears to have abandoned any such claim.

at 24-25.  The plaintiff testified that, upon hearing of Brown's return to work, he called Weaver and asked for his job back. Depo. of Richardson at 142-45.  Weaver responded that whether Richardson could get his job back was "up to" Henderson. Depo. of Richardson at 144-145.  The plaintiff took no further action to get his job back. Depo. of Richardson at 146.

The plaintiff commenced this action on December 22, 2000.  The plaintiff alleges that the defendant retaliated against the plaintiff by refusing to rehire him, and that he was subjected to a racially hostile work environment during his employment with the defendant.  Complaint (Counts I and II).

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23.  The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of genuine issues of material fact. *Id.* at 323.  The burden then shifts to the nonmoving party to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324; Fed. R. Civ. P. 56(e).  In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  That party must demonstrate that there is a "genuine issue for trial." Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 587; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"The mere existence of some factual dispute will not defeat summary judgment unless the factual dispute is material to an issue affecting the outcome of the case . . .  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).  A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir. 1991).

4

On motions for summary judgment, the court shall construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). All "reasonable doubts" about the facts and all justifiable inferences are resolved in favor of the nonmovant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). However, all "doubts" need not be so resolved. *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987).

### III. Legal Analysis

In the light most favorable to the nonmoving party, the court finds that no genuine issue of material fact exists and that the defendant is entitled to judgment as a matter of law.

### A. *Retaliation Claim*

Title VII addresses retaliation by making it an unlawful employment practice for an employer to discriminate against an employee because he sought protection under Title VII. 42 U.S.C. § 2000e-3(a) (1995). To establish a prima facie case of retaliation, a plaintiff must show that: "(1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) there was a causal link between his protected activity and the adverse employment action." *Bass v. Board of County Comm'rs*, 256 F.3d 1095, 1117 (11th Cir. 2001); *see Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 507 (11th Cir. 2000). While filing a charge with the EEOC is a protected activity, no evidence exists to show that an adverse employment action occurred.

The plaintiff asserts that the defendant's failure to rehire him constituted an adverse employment action. Complaint at ¶ 16. The Supreme Court has held that former

employees are within the coverage of 42 U.S.C. section 2000e-3(a). *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997).  Thus, post-employment actions may constitute adverse employment actions. *See id.* at 339.  The plaintiff asserts that he should have been hired back after his termination because Brown was allowed to return to work. Plaintiff's Memorandum at 8-9.  However, unlike Brown, the plaintiff never apologized or made an accounting for the missing scrap metal. Depo. of Richardson at 146.  While the plaintiff called Weaver to ask for his job back, the plaintiff never followed up with Weaver and never talked directly with Henderson about returning to work. Depo. of Richardson at 146.  Since the defendant never made a decision to not rehire the plaintiff, the defendant has not engaged in any post-employment action that could be considered adverse.  Absent an adverse employment action, the plaintiff has failed to establish a *prima facie* case of retaliation.

In consideration of the foregoing, the court finds that the defendant's motion for summary judgment on the retaliation claim is due to be granted.

### B. *Racially Hostile Work Environment Claim*

Title VII protects an employee from discrimination "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. 2000e-2(a)(1) (1995).  To establish a hostile environment claim, the plaintiff must show that: (1) he belongs to a protected group; (2) he has been subject to unwelcome harassment; (3) the harassment

was based on his race;[3] (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding his employer liable.[4] *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 582 (11th Cir. 2000) *quoting Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999).

The harassment must have been objectively and subjectively severe or pervasive enough to alter the terms and conditions of employment and create a discriminatorily abusive working environment. *Mendoza*, 195 F.3d at 1246. The objective component requires that a reasonable person in the plaintiff's position would perceive the environment to be abusive. *Id.* The court may consider the following factors to determine whether the environment was objectively hostile: the frequency and severity of the racial slurs; whether the slurs were threatening or humiliating rather than merely offensive; and whether the slurs unreasonably interfered with the plaintiff's work performance. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." *Harris*, 510 U.S. at 21-22.

---

[3] The plaintiff admits that "boy" is slang for man and was used to refer to men at work, regardless of race. Therefore, any use of "boy" to refer to Richardson does not constitute harassment based on his race.

[4] The defendant took remedial action in response to the plaintiff's complaints of cussing. Therefore, a basis for holding the defendant liable for alleged harassment is lacking.

The conduct alleged by the plaintiff does not rise to the required level of severity. The plaintiff complains of the language used by one of his supervisors. Depo. of Richardson at 179. Specifically, the plaintiff alleges that Weaver used the word "nigger." *Id*. No one disputes that such word is racially derogatory. However, Weaver's alleged use of the word does not rise to the level of severity necessary to create a racially hostile working environment. *See Mendoza*, 195 F.3d at 1246. The plaintiff testified that Weaver used the word from two to four times during his employment with the defendant. *Id*. The plaintiff was employed with the defendant for more than one year. *See* Exhibit 5 to Plaintiff's deposition. According to the plaintiff's own testimony, racial slurs were infrequent. *See* Depo. of Richardson at 179-181.

Next, the alleged slurs did not unreasonably interfere with the plaintiff's work performance. The plaintiff admits that Weaver's language did not interfere with his ability to perform his job. Depo. of Richardson at 231. A reasonable person in the plaintiff's position would not perceive infrequent racial slurs that do not interfere with his ability to perform his job as sufficiently severe or pervasive to alter the terms and conditions of employment. Therefore, the plaintiff has not met the objective component of the severity element.

Finally, the plaintiff indicates that he did not consider his work environment to be hostile. The plaintiff testified that he enjoyed working for the defendant. Depo. of Richardson at 153. The plaintiff further indicated that he would like to return to work for the defendant with his complaint that he was not rehired. Complaint at ¶ 16. Thus, the

subjective component of the severity element is also lacking.  Absent proof of sufficiently severe harassment, the plaintiff has failed to establish a *prima facie* case of hostile work environment.

In consideration of the foregoing, the court finds that the defendant's motion for summary judgment on the racially hostile work environment claim is due to be granted.

This court, having considered all of the evidence submitted, finds that no genuine issue of material fact exists and that the defendant is entitled to judgment as a matter of law.

### IV. Conclusion

The defendant's motion for summary judgment is hereby **GRANTED**.

**DONE** and **ORDERED** this the ___19___ day of November, 2001.


INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE